**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**CARL TATE,**                                                                      **PLAINTIFF**
**ADC #105109**

**V.**                 **CASE NO. 2:17-CV-95-DPM-BD**

**WENDY KELLEY,** *et al.*                                                   **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party to this lawsuit may file written objections with the Clerk of Court within 14 days of filing of the Recommendation. Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

**II.**     **Discussion:**

    A. Background

Carl Tate, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) In his original and amended complaints, Mr. Tate alleged that the Defendants were deliberately

indifferent to his serious medical needs. He named Director Kelley, Officer Westbrook, Dr. Stieve, Dr. Campbell, and Nurse McVay as Defendants. Mr. Tate later moved to amend his complaint to add Director Griffin as a party Defendant, which the Court granted. (#27, #29) Since that time, the Court has dismissed Mr. Tate's claims against Defendants Kelley, Westbrook, and Griffin. (#39, #46)

Defendants Stieve, Campbell, and McVay ("Medical Defendants") have now moved for summary judgment on Mr. Tate's claims against them. (#64) Mr. Tate has responded to the motion, and the Medical Defendants have replied to Mr. Tate's response. (#69, #70) The motion is now ripe for review.

B.  Summary Judgment Standard

In a summary judgment, the Court rules in favor of a party before trial. A party is entitled to summary judgment if the evidence, viewed in a light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute about any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

C.  Undisputed Facts

The undisputed facts show that, Mr. Tate fell and fractured his wrist sometime in late 2015 or early 2016, prior to going to prison. (#66-2 at p.20) An orthopedic surgeon placed pins in his wrist to treat the fracture. (*Id.* at p.21)

In 2016, Mr. Tate was incarcerated at the Ouachita County Jail for "a month, two months" before being transferred to the ADC in May of 2016. (*Id.* at p.22) While housed at the County Jail, Mr. Tate did not take any pain medication. (#66-2 at pp.30-32)

On May 25, 2016, Mr. Tate was transferred to the Ouachita River Correctional Unit of the ADC. (#66-4 at p.5) On that date, he requested naproxen for left arm pain. (#66-1 at p.2) That same day, he was prescribed 500 milligrams of naproxen to be taken twice daily for thirty days. (*Id.*) On or around that time, Mr. Tate was assigned to the hoe squad.[1] (#66-2 at p.23)

On June 1, 2016, Mr. Tate submitted a health service request form complaining of pain in his wrist. (#66-1 at p.4) On June 4, Nurse Sylvester (not a party to this lawsuit) examined Mr. Tate at sick call and noted "[a]bnormality [] to Lt wrist. Inmate unable to turn wrist completely or spread fingers without pain." (*Id.* at p.7) She referred Mr. Tate to the provider and told him to elevate his arm and use a warm compress. (*Id.*)

On June 14, Mr. Tate submitted another health service request form complaining of pain in his left wrist and asking to see a doctor. (*Id.* at p.8) The next day, Defendant Campbell examined Mr. Tate. (*Id.* at p.11) She noted minimal swelling in Mr. Tate's left wrist, "strong, palpable left radial pulse," and a limited range of motion. (*Id.*) Defendant Campbell ordered an x-ray of Mr. Tate's left wrist; directed Mr. Tate to continue naproxen for thirty days[2]; and restricted him to one arm/hand duty for thirty days. (*Id.*) On that same date, Mr. Tate's x-ray results revealed "an old fracture involving distal

---

[1] Mr. Tate testified that he was assigned to the hoe squad for approximately one month. (#66-2 at p.25) It is undisputed that the Medical Defendants were not responsible for assigning Mr. Tate to the hoe squad. (#66-2 at pp.51-52)

[2] In his deposition, Mr. Tate testified that he "can't recall no naproxen" and that, although he was prescribed pain medication, "he might not get them." (#66-2 at pp.35, 40, 45-50) Mr. Tate, however, explains that he does not seek to hold the Medical Defendants liable for his not receiving pain medication. (*Id.* at p.50)

3

radius and ulna with no displacement" and "associated soft tissue swelling." (*Id.* at p.9) The radiologist noted that a follow-up was "not needed." (*Id.*)

On June 16, Mr. Tate refused sick call stating "I seen the doctor already." (*Id.* at p.11)

On June 30, Mr. Tate submitted a health service request form complaining of pain and swelling in his left wrist, and requesting an MRI. (*Id.* at p.13) On July 4, Nurse Bidwell examined Mr. Tate and noted his current order for naproxen and his need to review his x-ray. (*Id.* at pp.13-14)

On July 13, APN Drummond noted that he was supposed to see Mr. Tate to review his x-ray results with him, but that Mr. Tate was "out to court." (*Id.* at p.14)

On July 27, Mr. Tate submitted another health service request form complaining of wrist pain and requesting to see a doctor. (*Id.* at p.15) On August 3, APN Drummond reviewed Mr. Tate's x-ray results with him and conducted a physical exam. (*Id.* at p.18) Mr. Drummond provided Mr. Tate an Ace bandage for sixty days and ordered activity restrictions. (*Id.*) Mr. Drummond noted that Mr. Tate should continue one-arm duty and continue taking naproxen. (*Id.*)

On September 6, Mr. Tate submitted a health service request form complaining of wrist pain. (*Id.* at p.19) On September 15, Nurse Baker examined Mr. Tate and noted edema but a full range of motion. (*Id.*) In addition to continuing his course of care, Nurse Baker prescribed 600 milligrams of ibuprofen to be taken three times daily for thirty days. She also scheduled an x-ray examination for Mr. Tate. (*Id.*)

On September 18, Mr. Tate underwent an x-ray examination. (*Id.* at p.21) No acute fracture or dislocation was observed. (*Id.*) In addition, the x-ray results revealed that Mr. Tate's hardware was "intact" and that the earlier radius fracture had "stable alignment." (*Id.*) Soft tissue swelling, however, was noted. (*Id.*) Dr. Holder concluded that the x-ray results were "normal" and that Mr. Tate should follow up with the provider. (*Id.*)

On October 24, Mr. Tate submitted another health service request form, but on October 28, signed a refusal of treatment form indicating "I'm okay." (*Id.* at pp.23, 25, 26)

On November 6, Mr. Tate submitted a health service request form complaining that his left wrist was swollen and that he was in pain. (*Id.* at p.27) The next day, Nurse Baker examined Mr. Tate. (*Id.* at p.28) She noted edema to "anterior aspect of left hand" and Mr. Tate's complaint of pain with movement. (*Id.*) She provided him a prescription for additional Tylenol, extended his one-arm duty restriction, and extended the authorization for a wrist brace. (*Id.*)

On November 20, Mr. Tate submitted another health service request form complaining of left-wrist pain and swelling. (*Id.* at p.31) The following day, Dr. Holder examined Mr. Tate and diagnosed a ganglion cyst on his left wrist. (*Id.* at p.32) He ordered 50 milligrams of Tramadol for Mr. Tate to take three times daily for seven days. (*Id.*) Dr. Holder wrote medical restrictions for no duty, no sports activities, and no yard

call. (*Id.*) Dr. Holder also referred Mr. Tate to "ortho" for a surgical examination. (*Id.*) The same day, the consultation request was approved.[3] (*Id.* at p.34)

On November 24, Nurse Sackett examined Mr. Tate for his complaints of left wrist pain. (*Id.* at p.36) She noted a swollen left wrist with a full range of motion. She referred Mr. Tate to the provider for a renewal of his Tramadol prescription and his restriction to one-arm duty. (*Id.*)

On November 29, Defendant Campbell examined Mr. Tate. (*Id.* at p.37) Defendant Campbell noted tenderness in Mr. Tate's wrist and also the previously diagnosed ganglion cyst. (*Id.*) Defendant Campbell renewed Mr. Tate's Tramadol prescription and advised him that his consultation with an orthopedist had been approved and that his appointment was pending. (*Id.*)

On December 20, Defendant Campbell again examined Mr. Tate and noted that his appointment with an orthopedist had been scheduled. (*Id.* at p.42) She also renewed Mr. Tate's Tramadol prescription for thirty days and renewed his one-arm duty restriction. (*Id.*)

On January 14, 2017, Mr. Tate submitted a health service request form complaining about severe pain in his left wrist. (*Id.* at p.46) The following day,

---

[3] Non-party medical staff members later cancelled that consult request. (*Id.* at pp.34-35)

Defendant McVay attempted to examine Mr. Tate during sick call, but he refused treatment.[4] (*Id.* at pp.47-48)

On January 17, Mr. Tate submitted another health service request form explaining that his pain medication prescription was expiring soon and requesting to see Defendant Campbell. (*Id.* at p.49) On the same date, Nurse Gardner entered a note in Mr. Tate's medical records documenting that Dr. Holder had mistakenly referred Mr. Tate to orthotics/prosthetics, rather than to an orthopedist. (*Id.* at p.51) Nurse Gardner then submitted an orthopedic consult. (*Id.*)

On January 19, Mr. Tate submitted a health service request form complaining of severe wrist pain. (*Id.* at p.53) On January 23, Nurse Sackett examined Mr. Tate and gave him acetaminophen and naproxen. She told Mr. Tate that his Tramadol prescription could not be renewed, however, because of his referral to an outside provider. (*Id.* at p.55)

On February 1, Mr. Tate submitted another health service request form stating his fear that his left wrist might be fractured. (*Id.* at p.56) On February 4, Nurse Fiting examined Mr. Tate and referred him to a provider. (*Id.* at p.57)

On February 9, Dr. Theresa Wyrick examined Mr. Tate at the University of Arkansas for Medical Sciences ("UAMS") Orthopedic Clinic. (*Id.* at p.59) Dr. Wyrick diagnosed Mr. Tate with carpal tunnel syndrome with "prominent screws." (*Id.* at p.61) She recommended that surgery be scheduled and that Mr. Tate be prescribed Tramadol.

---

[4] In his deposition, Mr. Tate testified that Defendant McVay told him that, if he executed the refusal of treatment form, she would refer him to a doctor. (#66-2 at pp.54-55)

(*Id.*) On the same date, Mr. Tate's ibuprofen prescription was discontinued and his prescription for Tramadol was renewed. (*Id.* at p.63)

On February 13, Mr. Tate submitted a health service request form complaining of severe wrist pain and a need for an orthopedic consult. (*Id.* at p.65) The same day, Defendant Campbell submitted a consult request for Mr. Tate to undergo surgery. (*Id.* at p.66) On February 28, Mr. Tate's consult request was approved. (*Id.*)

On April 27, Mr. Tate had surgery at UAMS to remove the pins in his left wrist and for carpal tunnel surgery.[5] (*Id.* at pp.78-82)

Following surgery, Mr. Tate submitted multiple health service and inmate request forms complaining of wrist pain and asking that his pain medication prescription be renewed. (*Id.* at pp.87, 89, 93, 101, 102) Following each request, Mr. Tate's pain prescription was renewed. (*Id.* at pp.88, 90, 94, 105)

On June 22, Dr. Wyrick examined Mr. Tate at UAMS for a follow-up appointment. (*Id.* at pp.96-100) On July 9, Mr. Tate underwent another x-ray examination. (*Id.* at p.106) No new wrist fracture was revealed. (*Id.*)

Based on Mr. Tate's medical records, he continued to take prescription pain medication until his release from the ADC in October of 2017. (*Id.* at pp.111, 119, 120, 122)

---

[5] In his deposition, Mr. Tate explains that he is not attempting to hold anyone liable for the medical treatment that he received (or failed to receive) following surgery in April of 2017. (#66-2 at pp.17-18)

D.  Deliberate Indifference Claim

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). "Deliberate indifference" is evidenced, however, only where an official knows of an excessive risk to an inmate's health, yet disregards that risk. To be held liable, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

Moreover, mere disagreement with treatment decisions is not conduct that can support a claim of deliberate indifference. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Stated another way,"[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that 'he did not feel' he received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Defendants attach the transcript from Mr. Tate's deposition to their motion. (#66-2) In his deposition Mr. Tate testified that he sued Defendant McVay because she told him that she would refer him to a provider if he signed a refusal of treatment form on January 15, 2017, and because she "neglected [his] medical needs." He stated that sued Defendant Campbell for misdiagnosing him with a ganglion cyst and for being

9

"indifferent to [his] medical needs"; and he sued Defendant Stieve based on his failure to renew his Tramadol prescription (*Id*. at pp.36, 42, 54-55, 63, 68).

Defendants also attach Defendant Stieve's affidavit in support of their motion for summary judgment. (#66-3) Based on his review of Mr. Tate's medical records, Defendant Stieve concluded that Mr. Tate "had appropriate access to healthcare and . . . was provided with appropriate care and treatment." (*Id*. at p.9)

Mr. Tate has not come forward with any evidence to contradict Defendant Stieve's testimony. Based on the undisputed evidence presented, no reasonable fact-finder would conclude that the Medical Defendants acted with deliberate indifference to Mr. Tate's needs. To the contrary, Mr. Tate's medical records indicate that his medical needs were consistently addressed. He was provided both prescription and over-the-counter medications to relieve his pain, as well as authorizations for Ace bandages. And, he was restricted to lighter work assignments based on his medical condition. Mr. Tate underwent several x-ray examinations and, ultimately had surgery on his wrist.

Even if Dr. Holder misdiagnosed Mr. Tate with a ganglion cyst and mistakenly submitted a consult request for an orthotic appointment rather than an orthopedic appointment, that conduct amounts to negligence, as worst. Negligence, even gross negligence cannot support a claim for deliberate indifference. In any event, Dr. Holder is not a party to this lawsuit.

Here, Mr. Tate clearly disagrees with the treatment that he was provided, but the undisputed facts fall exceedingly short of demonstrating that the Medical Defendants

10

were deliberately indifferent to Mr. Tate's medical needs. Based on the undisputed facts in the record, the Medical Defendants are entitled to judgment as a matter of law.

### III. Conclusion:

The Court recommends that the Medical Defendants' motion for summary judgment (#64) be GRANTED and that Mr. Tate's claims against these Defendants be DISMISSED, with prejudice.

DATED this 24th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE